next case on the calendar which is Timsina v. United States. Let me just make sure counsel is there. Mr. Tapp. Good morning, your honors. Okay, good morning. You can hear and see us okay? I can. Good. All right. And Ms. Rinaldo. Yes, good morning, your honors. Okay, and you can see and hear us all right? Yes, I can. Good. All right. So, Mr. Tapp, you have reserved two minutes for rebuttal. So, you've got eight minutes out of the gate and the floor is yours. Thank you, your honor. May it please the court. My name is Andrew Tapp. I represent the appellants in this case who were a SNAP authorized retailer. The Supplemental Nutrition Assistance Program is what Food Stamps has become over the years. It's what it's called. We refer to it in a briefing as SNAP. The agency refers to it as SNAP both in its publications and in its enforcement. Now, this case involves the permanent disqualification of my clients from the SNAP program pursuant to 7 U.S.C. 2021 and subsequently a judicial review pursuant to 7 U.S.C. 2023. The disqualification was based upon an allegation of trafficking. This allegation was substantiated, as argued by the department, by the presence of four different scan categories. These are also referred to as transaction patterns. And each of these transaction patterns contains dozens or in some cases hundreds of individual transactions which give rise to these particular patterns. These are the basis. The patterns are the basis for the charge letter that was issued to my clients back in 2000 and I believe it was 16. But the transactions themselves occurred over a period of time that was six months in 2015. By the time the retailer receives a charge letter like this, a number of months have passed since those transactions occurred. But they're expected to respond to the agency and indicate the basis for how the transaction characteristics came to pass. Now, this particular case went through two different administrative phases, neither of which were evidentiary. Both are very informal. There's no administrative that nature, which is why the congressional language in 7 U.S.C. 2023 states this as a trial de novo matter to be considered by the district court should an aggrieved store bring appeal after the agency's actions and the administrative review that are provided for under the regulations. Mr. Tapp, that brings me to my first question. The statute, we're used to seeing administrative reviews in which the standard is, was the agency's decision supported by substantial evidence. We see a million immigration cases and half a million social security cases where that's the standard. This is distinctly different. Is that right? This is a de novo review by the district court? This is a completely different beast than all of the APA cases. The way that this statute is drafted is intended. I believe there's an old case called Redmond that talks about this is designed to give the retailer the opportunity to have an evidentiary hearing and discovery. There's not a formal administrative record that's compiled. So it's not only that the district court has a standard of review that's de novo. It's also that the procedure could include a whole new trial, albeit I take it not a jury trial. Is that right? It is a bench trial and I'd be hesitant to say that it's a whole new trial. These cases do not involve the disclosure of evidence or really any allegations at the administrative levels. All that's included are the transactions attached to a charge letter and those are set out in the record here. This isn't something though where there's a give and take. There's not an interview of the retailer. There's very rarely any actual exchange of the basis for why the initial determination is made. The only explanation that's received comes in the form of a final agency decision that is the administrative review officer's final action on behalf of the department. This is an unusual statute. So you're saying it's not exactly a do-over, it's just a do? That this would be the first It is the first hearing. It's the first evidentiary process, the first discovery. So one other thing that puzzles me is the government cites, and I think you may cite as well, cases from other courts, not from this circuit, saying that the burden of proof is on the store owner. That seemed to me at least odd. Even if it were a de novo do-over of a hearing that took place in the agency, which you say it's not, a do-over to me does not immediately call to mind a do-over with the burden of proof reversed. Do you agree that the burden of proof is on you in this new trial before the district court to prove that you didn't violate, your client didn't violate the regulations? There is a long track of records in court cases and things of that nature that do place the burden upon the retailer at the judicial review. Presumably, the agency action before it can take an action, the agency has the burden. This is all that I do, these EVT cases, and I do them all over the country, but there's never been any case that I have seen that the burden of proof is on the store owner before the government by the time you get to the judicial review. I personally do not agree with that approach, but I'm not Congress, so I can't change that. But did Congress say that the burden of proof is on the store owner, or is this an inference that courts have drawn from something in the statute? It's an inference. It's not in the statute itself. 7 U.S.C. 2023 seems to have been grafted together from a number of different places and different lines of thought, but when it comes to the three sub-provisions that deal with these judicial reviews, none of them speak to burden. They're largely procedural in nature. They talk about when things are supposed to be filed and where they're permitted to be filed, and it really just sets out that the district court is to look to see whether or not the agency has erred in the decision. What happened in this case was not an evidentiary hearing or bench trial, but was a summary judgment for the government. So the standard of review, even assuming that the burden of proof is on you, is if you raised sufficient evidence that a reasonable fact finder could conclude that you had not violated the statute, then summary judgment would be inappropriate. Is that wrong? It is correct that the burden was on the government for purposes of the motion for summary judgment, which was an early filed motion for summary judgment. This came before any evidence or any discovery had been conducted. This came more or less simultaneously with the production of the administrative record, and that was an objection that we had raised during the district court proceedings, and I had indicated to the court that we would like depositions and things of that nature. We filed, I believe, a 56-D response to the motion for summary judgment, indicating that we needed depositions to really flesh this out. Having said that, the court did give us some limited discovery, and for purposes of our motion for summary judgment, we presented eight different categories of evidence that were explaining how it was these particular transaction categories came to be. The primary focus here, though, I think, has to be on what the evidentiary objective is for the retailers, because these are data-driven cases. This isn't something where someone has witnessed any of these transactions. This is where the agency has determined that these particular transaction types may correlate to trafficking, and we see that there's a lot of these transactions at your store. Please tell us what it is that causes these particular characteristics to occur time and again in your business. So it's one of those things where it's very circumstantial. The particular transactions are not the question. I think that we covered it pretty thoroughly in our reply brief. The actual patterns, the transaction categories, are what the agency is seeking a response for, and that's what our evidence was directed to in response to the motion for summary judgment. We had a portion of the receipts from these transactions. We had affidavits from SNAP participants who shopped at the store who talked about why they shopped at this store versus a different store. We had inventory records that showed that this store was a well-stocked store that had expensive items that had catered to Nepalese immigrants, that they spoke the language from Nepal, and that they had a particular clientele that was aware of their store and would travel past other stores to come shop at a store that was more familiar to them, that had the inventory that they looked for. So to the extent that there is evidence that can be inferred that the department is relying on here, that evidence takes the form of, statistically, when you look at the pattern of the things that occurred here, there are too many quick transactions on two different cards or too many situations where all of the benefits are used up at once and so on. And your evidence offered in response, or the thing you want discovery about is, to some degree, this is like expert statistical testimony and you'd like to hear something about how they derived their formulas and why the court should be persuaded that these patterns reflect an actual violation. That's the kind of discovery you wanted? That is the basis of a significant portion of the discovery that I wanted in this particular case, and in most of these cases. The truth of the matter is, a lot of the case law that's out there takes at face value that these transaction categories have a statistically significant correlation to the act of trafficking in SNAP benefits. Now, we didn't dive into this case as we did in many other cases about the fact that there's no statistical study, and I think if we were to allow this case to proceed all the way to trial, there would be some lay witness testimony problems and some expert testimony problems here because the data analysis amounts to a statistical evaluation. And that's specifically important if you consider the fact that the regulations nor the statutes set out that these transaction characteristics are violative. This has to do with the timing of the transactions and the size of the transactions, neither of which the retailer has control over. The retailer has to accept transactions presented for purchase that involve eligible items on an EBT card. These are transactions retailers can't control. They have nothing in the regulations or in the statute that indicate that there's something nefarious about them. We would argue that if you were to certainly look at it from the basis of a preponderance of the evidence standard, which is what we're dealing with here, most of what the government's evidence is is speculation, hearsay, and arbitrary, frankly. So, you know, when we did our response and how this case is set up, though, the appellants went to great lengths to talk about these different business practices, these different issues that exist for the Nepalese community that cause these particular transactions to occur, and some of that is shopping habits and that sort of thing. So, you know, I believe that there was more than significant evidence here to show that we had a genuine issue of disputed fact, and I believe that this case should have survived summary judgment and been permitted to go to trial as Congress had intended. All right. You've reserved a couple of minutes for rebuttal. Ms. Tapp, we'll now hear from Ms. Rinaldo. Good morning, Your Honors. My name is Melissa Rinaldo. I am an Assistant U.S. Attorney for the District of Vermont, and I represent the United States in this case. Following the close of discovery and extensive briefing, the court conducted a de novo careful review of all the evidence and arguments presented, and contrary to what counsel has represented, there was an administrative record before the court. There was a multitudinous page record of all of the administrative actions that were taken, and at that time, the court reviewed all of that evidence, all of the arguments made by the store, and found that the store had failed to meet its burden of finding, demonstrating by a preponderance of the evidence that it was not engaged in trafficking. Ms. Rinaldo, is it your understanding of the district court's conclusion, and is it your theory that the government, having presented what seems to me to be a fairly persuasive case that there are a lot of transactions that might look odd, the burden on the plaintiff was to establish that each and every one of the cited transactions specifically, with specific evidence about that transaction, was a legitimate transaction? Your Honor, the burden of proof is on the plaintiff to establish that they did not traffic, and there are numerous identified transactions, hundreds of identified individual transactions. Yes, but there's no, excuse me, but there's no individualized evidence that the government offered that any of these transactions was improper, right? You're relying on patterns and the notion that these patterns are peculiar. Yes? We don't just rely on the patterns of evidence, Your Honor. The patterns that are identified are what initiate the investigation. There is a thorough investigation at the administrative level. Once these patterns raise a red flag, that suggests that some of them may well be trafficking. Some of them may well not be trafficking, but it's up to the store to demonstrate that all of these transactions are legitimate purchases of snack-eligible food. So if they do not have a witness who can say, I remember that on June the 18th, Mr. So-and-so came into the store, and this is precisely what he did. He bought a giant bag of chips. It was very expensive, and then he paid for half of it with his card, and then the next guy paid the other half with that card, and I remember that happening. Absent that kind of evidence, they have not shown anything about this particular transaction, and so they lose. Your Honor, there are numerous ways for the store to demonstrate that these transactions are legitimate. They do not need, and we do not expect them to provide a witness for every single one of the hundreds of transactions. So what they did present in this case, as I understand it, was some evidence that here are examples of reasons why the things that the government thinks are suspicious could happen, and here are witnesses saying, this particular time, that is what happened. I remember that. That is what happened. So what is missing? I mean, that seems to me to create a fair ground of argument as to what is or is not an appropriate pattern. What is missing, Your Honor, is that the explanations do not satisfy or thoroughly explain all of the transactions. The district court explained in detail and identified several that were not covered by the explanation. So the representative or sample explanations are fine, and they may explain some of the transactions, but they don't explain all of them. For example, the district court pointed out four or five different transactions in the first category, showing that it was physically impossible, given the physical attributes of the store, the makeup of the store, the inventory, it was physically impossible for these hundreds of dollars of transactions to occur within 27 seconds. It's a small store with no shopping carts, no conveyor belts. People have to have a shopping basket, and they carry small dollar items such as bread and milk and cans of beans, you know, even bags of rice. There might be one or two things that are more expensive, but certainly not in the hundreds of dollars that you're looking at in these transactions. And so these transactions occurred much too rapidly to be physically possible. In the second transaction, there were numerous households that went back numerous times to the store in one day, sometimes for money. Now, what typically happens and is what's a clear pattern of trafficking is it occurs when a household is trying to hide the fact that they are getting more money, and so they use multiple smaller dollar transactions in order to present the appearance that they are not cashing out all of their benefits. A third transaction... What is the evidence that was before the district court that that is a pattern of trafficking, that that's something that happens? That's the agency's expertise? It is the pattern that is identified by the actual transactions themselves. And the cases... Well, no, the pattern that's identified by the transactions is the EBT card is used for a $2 transaction, and then later in the day for a $10 transaction or whatever the numbers are. You're saying that that's what traffickers do. That's not what regular people do. Traffickers come, and instead of cashing in the card for all that it's worth, they come back several times on the same day and take smaller amounts of money. That seems plausible to me, but what is the evidence in the record that that is what traffickers typically do, or that there's a history of this kind of behavior happening? The evidence of that in the record are the analyses by the agency. So in that administrative record, that hundreds and hundreds of pages of administrative record that were compiled, those contain the administrative reports which document all of the investigation that was conducted. So that investigation included not only the patterns that were identified, that's just a red flag. That indicates to the agency that there are suspicious patterns here that we've determined based on our prior experience with these cases, that this is what trafficking involves. So what happens is that there's an on-site investigation. After the on-site investigation... But the on-site investigation consists of somebody goes and looks at the store and wrote a report, a very thorough report of what the store looks like and what kind of stuff they have. Correct. That's correct. And then in this case, a gentleman named Ahmed, Mr. Arif Ahmed, then went to the data, pulled all the transactions from this store and compared and put together. These are undisputed transactions. These all occurred at the store. There's no disputing that. They occurred and the individual review officer looks at those and compares those and says that these are the transactions that happened too rapidly to be plausible. In this case, absent some thorough additional explanation. During the administrative process, the market had the opportunity and did indeed present inventory records, but only for one month. They provided some receipts, but not specific to any of these transactions. Those receipts, some were rejected because they were just shotgun thrown at the agency. Things like McDonald's receipts, a record of a toll record showing perhaps that someone from the store went to New York City and bought some food stuff to bring back to Vermont. These records are analyzed. They are presented and the explanations are provided. In this case, there were five affidavits that were presented to the agency at the initial level. At the next level of review, there were additional documents and evidence provided. The agency had numerous opportunities before the agency to present documentation. There was no evidentiary hearing, but the store owner supplied affidavits from himself, numerous affidavits from himself, an affidavit from his accountant, and five affidavits from customers. Importantly, none of these customers were any of the households that were identified as having had these suspicious transactions. After all of this investigation is done, then the agency issues its final decision. In this case, the decision was against the store. Then the store has the opportunity to get de novo review in the district court. I think it's important to understand the reason why this is a de novo review. As Your Honor initially alluded to, the administrative process is shorter and more perfunctory than the district court. The reason for that is because this is the largest program in the USDA's budget. We are talking about hundreds of thousands of beneficiaries. We are talking about thousands and thousands of stores that are able to take these EBT benefits from the beneficiaries. These are stores that sometimes there is abuse. This program relies on the honest integrity of the stores. When there is abuse of the system, this diverts all of the money and those benefits. I understand the importance of this, but is there an affidavit by the proprietors of the store saying, we never do this, we never take cash? Yes, there is. And in the ordinary case, isn't that the kind of thing that gets you to a jury that is... Not in this case. If somebody says I slipped, not in this case. There's no requirement that the district court hear that person say that in person and decide that person's credibility because no reasonable fact finder. It's not just that the court looks at these records and thinks, I think this is how it comes out. The court can decide that no reasonable fact finder would believe this person's explanations. That's correct. And importantly in this case, those explanations do not address all of the transactions in this case. And that's precisely the problem with the evidence that was presented. The evidence, and recall that the store has the burden of proof. And why do you say that? I mean, where does it say in the statute that the store has the burden of proof? It does not say in the statute. And the second circuit has not ruled on this issue, but I encourage and invite the second circuit to rule consistent with the first circuit in the IROB case, which recently discussed at length, which we cite in our brief, why the store has the burden of proof. And that is because they're bringing the case. They are also in the best position to present the records. They know and can explain whether or not their transactions were legitimate. Counsel, let me ask you this. I mean, I do understand that the store is in the better position to explain how it does business and what its customers do and how the transactions take place. But how can any store be in a position to account for every one of, say, 250 transactions identified by a computer? I mean, even if you maintain really good records, you basically have to close your shop down in order to deal with this. And therefore, it seems to me the kind of burden you're talking about is a crippling one. And that nobody can do. No one, no store can undertake as far as the kind of burden that you're talking about. Well, Your Honor, let me be clear. I'm not saying that every single transaction needs to have evidence, you know, a testimony explaining what it was. The cases, even the cases that the plaintiff cites indicate that there are, for example, a business practice that could explain away an entire pattern. For example, let's say someone sells bundles of meat for, you know, $50, $50 and no cents. And there are numerous transactions. And this is one of the patterns, although not in this case, where there are same cents. There's a same cents value. And I think the cases say that if all of these, most of these transactions, the preponderance of the evidence shows that these transactions are bundled sales of bundles of meat. You've identified two problems with the way this company does business. It says that you have multiple snap transactions from different households within a short period of time. And then they have multiple snap transactions from the same household within a short period of time. So basically, what you're saying is they have transactions that take place within a short period of time. And I don't know what a store owner who may have a busy business or it may be busy on the day that the stamps are have transactions and then different households have transaction that's describing the store's entire commercial experience. Well, first of all, I have a couple of responses to that, Your Honor. First of all, it is incumbent upon the store to maintain records. And certainly in this day and age of technology, we all go to grocery stores and we get itemized receipts showing exactly what we bought, not only... Not in every bodega in New York City. Now, maybe this is true in Vermont, although I would guess that there are going to be small towns in Vermont where there's a general store that does not have a scanner that prints out a receipt saying exactly what each customer bought. They have a bunch of stuff on the shelves. Somebody goes in, picks some things up, puts down some cash, and that's the transaction, right? Wait, to be approved for a SNAP program, you got to be more than just a general store, right? That has a 1930s register, correct? Correct. You need to have... There's a certain level. There's an application process. The store has to be investigated before it even gets authorized to accept SNAP benefits. And then... So what technology do they have to have? Do they have to have a scanner that will print out an itemized receipt for every transaction? They do not. And that's because FNS is not going to tell the store what records it needs to keep in the conduct of its business. But this is a problem. This is a reason why the store has to keep good records. As the First Circuit mentioned in the IROB case, the store cannot be rewarded for shoddy record keeping. So in this case, though, I do want to get... So what are the regulations that set forth what kind of records? You said that the agency isn't going to tell them what kind of records they have to keep. Your Honor, I'm not aware of any regulation that tells the store what records they need to keep or how they need to keep the records. But I do know that there... And particularly in this case, the administrative record reflects that there was an application process and there was an approval process. And so had the store not been... Had FNS not have concluded that this store was able to maintain records, it would not have approved the store. But getting back to the issue of the summary judgment, Your Honor, this is a case where the market had to provide substantive probative evidence demonstrating significant disputed material facts requiring trial. And that was not done in this case. Just because the store said they disputed a fact does not mean that that was evidence that was submitted to support it. And even the evidence that was submitted with these affidavits, these statements, explanations, efforts to make explanations, the court found that these were not plausible. Another instance where... Well, one of your whole patterns is a pattern of a number of cases in which early in the month, someone uses up their whole food stamp allotment. I've seen that done and I've seen it happen in front of me in a store. That happens and they put in evidence that that happens. These are supplemental benefits. This is not the whole welfare check of the person or the whole income of the person that they have to save for the last week of the month. What is the basis for... And they're saying that's what people do in our community. And you're saying it's not. Now, why isn't that a disputable fact where if you're saying that this is a rare thing or it doesn't really happen in the world, why don't you have to prove that to the court? Those facts were not disputed. There, the households were identified. There were seven households in this case that were identified as having suspicious transactions. And instead of taking depositions of those households, instead of providing evidence as to those specific transactions, those specific in those, by those households, there were generalized conclusions about general shopping patterns. Yes, but you are relying on the other side entirely on a general pattern in order to make the case and they are responding that's not such a good pattern. And your honor, we do not rely just on the pattern. That is not the case. We rely on the individual transactions and the appearance of the transactions. The patterns are what generate the initial investigation, but it is not. But I don't understand what you're saying. The fact of the transaction is that Mr. X or Ms. X came into the store and used their whole food stamp allotment on one shopping trip. That's the fact. That's presumably not disputed by anybody. The question is, did what, is what happened that the store owner gave them a pile of cash in return, presumably a discounted pile of cash? Traffickers don't do this for the pleasure of it. A discounted pile of cash for the food stamps or was this an actual purchase? And your evidence is there's a pattern. That kind of thing only happens or mostly happens with traffickers. That's not normal. And they want to depose the person who came to that conclusion to find out what's the actual empirical evidence that that only happens with trafficking. Well, your honor, these are tools. These are tools that the agency, because of its size, has developed in order to identify these potential transactions. We're not saying that they are all trafficking behavior, but it is so the court looks at the transactions and analyzes them based on and comes to its own conclusion. It doesn't matter what the tool said. It doesn't matter that these patterns, what matters is that the court found that the explanation provided by the store was not believable when at 5 o'clock or I'm sorry, 10 o'clock in the morning, the customer went to went to the market and spent $411, leaving 43 cents left on the benefit card for the rest of the month. That is not likely given the amount of and you have to look at the entire investigation. And that's why just the pattern alone is not what needs to be looked at. And again, the court looked at not only the patterns, but the makeup of the store, the combination of whether the amounts, there's nothing in the store that justified hundreds. What does the government have to introduce with respect to a particular transaction in order to place upon the store the burden of demonstrating that that was a legitimate transaction? This was a summary judgment motion, your honor. And so in a summary judgment motion, the government has to present evidence that this and we did it through the administrative record. What I'm asking is, is it enough to say, this is a pattern that we observe here. So we suspect that evil doings are going on in this shop. Correct. And then it is. That's enough. But I thought you said that's not just you don't just do. We don't just have that. We have more evidence than that, but it is up to the store to come in and say how that pattern and how that transaction was a legitimate transaction. Let me try again. Perhaps my question is. I apologize, your honor. No, I understand. We're just trying to communicate here. What does the government have to do to to to put the store. To place upon the store the burden of proving that that that a transaction or a series of transactions is legitimate. That is to say, is it enough for the government to say that there are large numbers of $50 transactions? Several responses to that, your honor. First of all, the burden of proof is on the store. It's on the plaintiff to demonstrate by preponderance of the evidence that it can prove its case. This is a summary judgment motion. But the government surely has to come forward with something. You just can't say, show me all of your transactions. The government has a burden to come forward with something.  To come forward with that should require the store to prove that every transaction in the category or particular transactions need to be justified. Are you asking for like the number of transactions? I'm not sure. I think I think the question is simply what is the burden on the government to establish to disqualify the store? And that's straight from the red, right? 278-6. Disqualification will result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report. So if that leads the agency to say, we think that that's consistent with a violation, that's enough to disqualify them. And that then triggers the burden, correct? That's correct. The agency presents this evidence and that's at the administrative level. And then in the district court, the burden is on the complainant, the store, in order to demonstrate that these were legitimate transactions, that it was not trafficking, and that the agency's decision was invalid. This is not a difficult or time-consuming effort, or it doesn't need to be, if the store is maintaining accurate records, if the store addresses the transactions. And in this case, the store did not address the transactions. Instead, it addressed the patterns. And it said, well, we've explained the patterns. Well, no, you haven't. You have not explained how all of the transactions within this pattern fit this pattern. And the court found that these were undisputed transactions. These were undisputed facts. And the store did not demonstrate how these fit the pattern. And there are numerous stores and numerous cases which say, certainly the store can come forward with a business practice or other explanations that can demonstrate it. And certainly in the reply brief, there were numerous administrative decisions provided by this market demonstrating that the agency did come out and say, oh, yeah, okay, we accept these legitimate transactions. These were legitimate. So we are reversing the agency decision. The most egregious cases are the ones that come before the courts. And so there are hundreds of evidence of trafficking. And we should not be acceding to the market's request to reduce its burden of proof and only establish the pattern. I have a pattern here. This is what explains it. When there are numerous unexplained transactions within that pattern, all of the transactions within that pattern have to be accounted for. And if they're not, then they are trafficking. And Congress has said that one instance of trafficking is sufficient in order to disqualify the store. I'm sorry. Let's stop it there. You've been on the hot seat for 30 minutes. So I want to give Mr. Tapp an opportunity to rebut. He's got two minutes, but who knows? It may go a little longer. Thank you, Your Honor. Thank you, sir. There's a lot of points here, and I'm going to sort of hit them as a matter of process. But as far as a store's approval, that's governed by 7 CFR 278.2. There are two criteria, and both of which have to do with either the store's inventory or the store's sales and staple foods. There is no requirement anywhere in any of the regulations or in statute that the store have computerized point of sale terminals, that the store has even a register. I have represented stores over the years who have had a calculator and an EBT terminal. So there's no records requirement anywhere in the regulation, not receipts, not invoices, not anything. And when these cases are issued, the date of the charge letter is typically nine months removed from the first steps of transaction. And we talked a lot, or at least the court talked a lot about the burden. The burden here is massive. And when you look at this from a logistics standpoint... Well, Mr. Tapp, let me try and make this concrete so that we can understand what we're talking about. In the charge letter, I think the first thing that they say is there are a series of SnapEBT transactions, multiple purchase transactions made too rapidly to be credible. And I'll just take the very two first ones in that list. One, on July 1st, 2015, there are swipes from two different households. One is for $52.54, the second one is for $84.00, and they take place within 24 seconds of each other. What is the explanation for that? Those transactions are the result of one of two things. One is pre-tabulation, and that is that the $84.00 transaction was compiled over time as the customer came up and put stuff on the countertop, and there was a running tabulation. And by the time the $52.54 transaction was processed, the next transaction was entered into the PIN terminal. Keep in mind, these transaction times and dates are records of when the transactions were run through the EBT terminal. Right, when the swipe takes place. Yes. The very next one, on the same day, two different households, and again, it's 24 seconds difference for a transaction of $67.23 and a transaction of $110.93. And then there's another one that has all of about 48 seconds between them, where the second one is almost $300. Now, I can certainly see why the agency is suspicious of that. And you're saying that it is a sufficiently common thing for transactions to be rung up in the way that you just described, that three times in the same day, and there may be more, I'm just looking at the first three pairs of transactions in that particular letter. They could plausibly all be accounted for by the kind of business practice that you are describing. Yes, Your Honor, I am. And that second transaction, it's number six on the list. It's two minutes and 48 seconds separated from a $41.78. Okay. So that's a less good one than the first 24 seconds. But the first one is 24 seconds, right?  Yes. And you look at the $84, the second part of that explanation earlier is that there are a lot of high-dollar, high-priced bulk items that are purchased here. I believe there was an affidavit where one of the clients purchases an entire crate of mangoes because they're imported from, I think it was the Dominican Republic. But these are not items that were put together at $3 and $5 and $6. Some of these items are 50-pound bags of rice that go for $20, $40, however much dollars, and they're crates of fruit. So this store isn't a convenience store. This store is a good-sized grocer and operates as a primary grocer for a number of these SNAP participants. And that's what the affidavits say. And so we have evidence in the record. And the fact that we've spent this much time debating the evidence, I think, in this hearing is indicative of the fact that we have a materially disputed, genuine fact issue here that needed to be resolved by trial, not by summary judgment. That's not what summary judgment is for. So the last thing that I wanted to mention real quick, when it comes to burden, this isn't just, do we keep the license, do we not keep the license? This case has been ongoing for four years. These machines get turned off as soon as a decision is made on a charge letter. So this machine went off a number of years ago. And then the statute, 7 U.S.C. 2023, subsection A18, notes that we are not, as a retailer, allowed to go back against the department if their decision is wrong and ask for reimbursement of lost profits. This is something where the retailer stands to lose the business, which the store in this case has been closed now. And this is a case where we can't go back and fix this, even when the department has made a mistake. So we've got 10 days to respond. We've got hundreds of transactions to deal with. Counsel mentioned it. There is a case out there that talks about having to provide an explanation for most of these transactions. What the court did here, the court very specifically said the appellants have established a genuine dispute of material fact as to some of the suspicious transactions, but they failed to establish a genuine dispute to each charge transaction in each category. The way that the district court handled this review would have made the burden on the other side of the moon, and it would have been judicially impossible to do from an economic standpoint. It's 500 transactions. If we're talking about this for a trial, that's days and days and days and days the court doesn't have. So I believe that the majority of the cases we cited, including the administrative cases that the appellee itself issued, all talk about address the characteristics of the transactions. If you provide adequate explanation for the characteristics of the transactions, you don't need to explain every single transaction. This is a preponderance of the evidence standard, and this is the information that we presented was more than satisfactory to at least defeat the motion for summary judgment, if not satisfy the preponderance of the evidence. If the court would allow me one last point, counsel also made a mention of how it's not just the patterns that are considered here. The patterns are the concrete foundation for everything else. If you look through the administrative record, the conclusions that the agency staff came to are all speculative. Why would this person go to that store and then that store? It must be trafficking. There's no evidence here. It's simply supposition. And that's not what the evidence code, that's not what the federal rules permit us to be able to consider. So that's a separate issue that comes out later. But again, you know, I believe that we have enough here to demonstrate a genuine issue of material fact that's disputed. All right. Thank you, Mr. Tapp. Thank you both. We will reserve decision.